UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| DARLENE HUGHES, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | No: 1:11 CV 400 |
|  | ) |  |
| WAL-MART STORES EAST LP, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

## OPINION and ORDER

### I.   BACKGROUND

In 2003, plaintiff Darlene Hughes began working for defendant Wal-Mart Stores East, LP, in Fort Wayne, Indiana. (DE # 21-3 at 20-22, Pl. Dep. 53:6-11, 61-62.) While plaintiff worked in various departments during her employment, in 2011, the relevant time period for purposes of this opinion, plaintiff was employed as a photo lab technician. (*Id.* at 29, Pl. Dep. 9:11-14.) Plaintiff testified during her deposition that her wage never decreased during her tenure with defendant, and she experienced yearly wage increases. (*Id.* at 30, Pl. Dep. 70.) Plaintiff also never experienced negative changes to her work schedule, nor was she disciplined while working for defendant. (*Id.* at 30-31, Pl. Dep. 70:23-25, 71:4-17.)

On January 7, 2011, plaintiff wrote a note documenting a situation where other associates were blowing bubbles, popping gum, clicking pens, and tapping counters. (*Id.* at 76-77, Pl. Dep. 137-38.) Plaintiff believed this was a form of bullying. (*Id.*) Plaintiff also testified that associates would make their car horns honk when she pulled into the associate parking lot and would whistle as she walked by. (*Id.* at 104-05, Pl. Dep. at 165-

66.) Plaintiff did not show this document to anyone at Wal-Mart. (*Id.* at 78, Pl. Dep. 139:2-3.)

On January 10, 2011, plaintiff transferred some photo paper to a Sam's Club location nearby. (*Id.* at 35-38, Pl. Dep. 76-78.) Plaintiff used an outdated form to do so. (*Id.* at 37-38, Pl. Dep. 77:18 - 78:14.). John Otera, who was a "zone manager" at that time (*id.* at 39, Pl. Dep. 80:7-25), approached plaintiff about her use of the form in the presence of two other coworkers and a customer. (*Id.* at 40-41, Pl. Dep. 81-82.) When plaintiff tried to explain, Otera told her to "shut up" and said that plaintiff cost the company money. (*Id.* at 42-43, Pl. Dep. 83-84.) On January 14, plaintiff authored a document describing the incident and gave it to the manager, co-managers, and most of the assistant managers at the store. (*Id.* at 50, Pl. Dep.104:19-25.)

Plaintiff testified in her deposition that on January 14, 2011, she met with Lookman Josef, an assistant manager, about the incident involving Otera. (*Id.* at 67-68, Pl. Dep. 125-26.) Plaintiff claims that Josef stated: "'Unfortunately you will be having more of these situations arising as the younger generation are entering into the workforce.'" (*Id.* at 69, Pl. Dep. 127.) Josef also told her about an article he read which said that the younger generation has a different work ethic and wants instant gratification, while on the other side of the spectrum baby boomers are causing trouble for the government. (*Id.*) Then Josef said "I hope you are not a baby boomer," and plaintiff responded that she was. (*Id.* at 70, Pl. Dep. at 128.) Josef asked her whether she was at the beginning or the end of the boom, and plaintiff said she was at the end. (*Id.*)

2

Josef also told plaintiff that the young were disrespectful. (*Id.* at 74, Pl. Dep. 132.) Plaintiff documented this interaction, and faxed her documentation to a superior. (*Id.* at 67, 108-09, Pl. Dep. 125, 169-70.)

Plaintiff testified during her deposition that on one occasion, Otera met her at the door and talked to her while walking very slowly, causing plaintiff to be one minute late clocking in for work. (*Id.* at 119, Pl. Dep. 189.) Plaintiff believed Otera was trying to create an opportunity to write her up. (*Id.*) Plaintiff was not written up for being late, but did receive a warning. (*Id.* at 119-21, Pl. Dep. 189-91.) Plaintiff further claimed that on January 17, 2011, Otera forced a fake smile and issued her a long, drawn-out "please" when asking her to ring something up. (*Id.* at 82-83, Pl. Dep. 143-44.) Plaintiff documented this behavior, which she described as "peculiar" and "[i]nsincere," along with her observations that one associate made clicking noises with some keys and another, who was blowing bubble gum, gave her a dirty look. (*Id.* at 83-84, 87, Pl. Dep. 144-45, 148.) Plaintiff did not report this behavior to anyone. (*Id.* at 88, Pl. Dep. 149.)

Plaintiff claimed that Otera gave her an unflattering review, though she still received a "meets expectations" rating and a pay increase. (*Id.* at 126-28, Pl. Dep. 199-201.) Plaintiff testified that nothing further happened with regard to Otera and Josef, because they were avoiding her. (*Id.* at 114, Pl. Dep. 184.) However, plaintiff claimed that she continued to be bullied by her coworkers. On January 20, plaintiff authored another document, in which she wrote that an assistant manager named Greg would not look at her and was avoiding her, and was hitting a grey cabinet with his hands in a

way that plaintiff felt was bullying. (*Id.* at 88-89, Pl. Dep. 149-51.) Plaintiff also wrote that Josef was hitting objects with his hands as he walked away from the photo department. (*Id.* at 90-91, Pl. Dep. 151-52.) Plaintiff did not report these occurrences to management. (*Id.* at 109, Pl. Dep. 170:11-19.)

On January 22, in another document, plaintiff wrote that an associate named Brad was hitting a cabinet as he was leaving the photo lab. (*Id.* at 91-92, Pl. Dep. 152-53.) She also mentioned that Josef knocked on a grey cabinet when he told her to get returns. (*Id.* at 92, Pl. Dep. 153.) According to plaintiff, another associate named Tristan also pounded on a grey cabinet, clicked his fingers, slammed DVDs on a counter, and gave her a dirty look that day. (*Id.* at 94, Pl. Dep. 155.) Plaintiff did not report these occurrences to management. (*Id.* at 109, Pl. Dep. 170:11-19.)

On February 15, 2011, plaintiff resigned from her position at Wal-Mart, informing Linda Decker in the personnel office that she could not work there any longer. (*Id.* at 106-08, Pl. Dep. 167-69.) Plaintiff testified that she felt forced to resign because her co-workers were avoiding her and bullying her and because of Otera's and Josef's behavior. (*Id.* at 115-16, Pl. Dep. 185-86.)

On July 29, 2011, plaintiff filed a charge of discrimination with the City of Fort Wayne Metro Human Relations Commission, on which she had checked the boxes for both age and sex discrimination. (DE # 1 at 5.) This charge was also forwarded to the Equal Employment Opportunity Commission ("EEOC"). In her charge, plaintiff outlined her interaction with Otera about the photo paper and Josef's comments

4

regarding younger staff members. (*Id.*) The EEOC issued a "right to sue" letter on August 15, 2011, in which it stated that it was closing its file on plaintiff's charge because "[t]he facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC." (DE # 1 at 6.) With the assistance of counsel, plaintiff filed suit against defendant in state court on October 25, 2011. (DE # 1.) Defendant properly removed the case to this court. (DE # 2.) On October 10, 2012, defendant moved for summary judgment on plaintiff's claims. (DE # 20.)

A few days later, plaintiff's counsel moved to withdraw from the case, citing an irretrievable breakdown in the attorney-client relationship. (DE # 19.) Specifically, plaintiff's counsel cited the fact that plaintiff refused to accept a $3,000 settlement offer by defendant, which plaintiff's counsel believed was an improper decision given the fact that the case was greatly weakened by plaintiff's deposition, which exposed plaintiff to potential sanctions under FEDERAL RULE OF CIVIL PROCEDURE 11 for unreasonably refusing to settle the case. (*Id.* at 2.) After holding a hearing on the motion, Magistrate Judge Roger B. Cosbey granted the motion to withdraw, and allowed plaintiff (at that point proceeding *pro se*) until November 26, 2012, to secure counsel, and until December 10, 2012, to respond to the pending motion for summary judgment. (DE # 25.)

These deadlines have long since passed, and no appearances have been filed on plaintiff's behalf, nor has plaintiff filed a response to defendant's motion for summary judgment. Accordingly, defendant's motion is ripe for summary ruling.

## II. LEGAL STANDARD

Defendant has moved for summary judgment. FEDERAL RULE OF CIVIL PROCEDURE 56 requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). "[S]ummary judgment is appropriate–in fact, is mandated–where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.,* 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted).

The moving party bears the initial burden of demonstrating that these requirements have been met. *Carmichael v. Village of Palatine, Ill.,* 605 F.3d 451, 460 (7th Cir. 2010). "[T]he burden on the moving party may be discharged by 'showing'–that is, pointing out to the district court– that there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325. Once the moving party has met his burden, the non-moving party must identify specific facts establishing that there is a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986); *Palmer v. Marion County,* 327 F.3d 588, 595 (7th Cir. 2003) (citing *Celotex,* 477 U.S. at 324). In doing so, the non-moving party cannot rest on the pleadings alone, but must present fresh proof in support of its position. *Anderson,* 477 U.S. at 248; *Donovan v. City of*

6

*Milwaukee,* 17 F.3d 944, 947 (7th Cir. 1994). In viewing the facts presented on a motion for summary judgment, the court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Chmiel v. JC Penney Life Ins. Co.,* 158 F.3d 966 (7th Cir. 1998); *Doe,* 42 F.3d at 443.

Because plaintiff failed to file a response to defendant's motion for summary judgment, defendant is entitled to summary ruling on the motion – that is, a ruling without the benefit of plaintiff's response. However, plaintiff's failure to respond does not automatically result in summary judgment for defendant. *Wienco, Inc. v. Katahn Assoc., Inc.,* 965 F.2d 565, 568 (7th Cir. 1992). Rather, the court must still "make the further finding that given the undisputed facts, summary judgment is proper as a matter of law." *Id.* Accordingly, the court's task will be to examine the factual record in this case to determine whether defendant has met its burden of demonstrating a lack of genuine issues of material fact warranting summary judgment in its favor.

### III. DISCUSSION

In her complaint, plaintiff states that she is suing for "age and sex discrimination, retaliation and constructive discharge" pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. 621, *et seq.*, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, and the City of Fort Wayne's anti-discrimination ordinance, F.W., IND., CODE OF ORDS. § 93.001 *et seq.* Constructive discharge is not a distinct claim; rather it is a theory about how discrimination caused harm to a plaintiff (*i.e.,* the employee was harmed because she was forced to quit).

*Bright v. Hill's Pet Nutrition, Inc.,* 342 Fed. App'x 208, 209 (7th Cir. 2009). Accordingly, the court will consider the theory of constructive discharge in the context of plaintiff's other claims, where appropriate. The remainder of plaintiff's claims – discrimination in violation of federal law (based on age and sex), retaliation in violation of federal law, and violation of the Fort Wayne anti-discrimination ordinance – are addressed in turn below.

### A. Federal Age and Sex Discrimination Claims

A plaintiff may prove employment discrimination in violation of federal law – whether based on age or sex – using either the "direct method" or the "indirect method." *Cerruti v. BASF Corp.,* 349 F.3d 1055, 1060-61 (7th Cir. 2003); *Faas v. Sears, Roebuck & Co.,* 532 F.3d 633, 641 (7th Cir. 2008). For the most part, the differences between these methods are not important in this case. What is important is that, regardless of the method of proof, a plaintiff alleging discrimination must demonstrate a materially adverse employment action. *Dass v. Chicago Bd. of Educ.,* 675 F.3d 1060, 1068 (7th Cir. 2012). "An adverse employment action is 'a materially adverse change in the terms and conditions of employment [that is] more disruptive than a mere inconvenience or an alteration of job responsibilities.'" *Stockett v. Muncie Ind. Transit Sys.,* 221 F.3d 997, 1001 (7th Cir. 2000) (quoting *Crady v. Liberty Nat'l Bank & Trust Co.,* 993 F.2d 132, 136 (7th Cir. 1993)) (alteration in *Stockett*). Plaintiff admits that she did not experience a decrease in pay, a significant change to her work schedule, or any disciplinary action during the relevant years of her employment. It appears that

8

plaintiff's only argument regarding the existence of an adverse employment action is that she felt she had to quit – or was constructively discharged – because "conditions were not favorable for me to remain there."[1] (DE # 21-3 at 133, Pl. Dep. 206:17-19.)

Constructive discharge occurs when an employee's job becomes so unbearable that a reasonable person in that employee's position would be forced to quit. *Roby v. CWI, Inc.*, 579 F.3d 779, 785 (7th Cir. 2009). The standard for establishing constructive discharge is extremely high; the situation must be "even more egregious than that needed for a hostile work environment" claim. *Overly v. KeyBank Nat'l Ass'n*, 662 F.3d 856, 864 (7th Cir. 2011). Further, the working conditions that caused the constructive discharge must be intolerable in a discriminatory way. No matter how "horrific the conditions," plaintiff must put forth evidence showing that the conditions were inflicted upon her because of her protected trait. *Vitug v. Multistate Tax Comm'n*, 88 F.3d 506, 517

---

[1] Plaintiff briefly attested during her deposition that at one point during her employment, she was told there were not enough budgeted hours for her to work in the photo lab, so she moved to another department, yet two weeks later a young man started working in the photo lab. (DE # 21-3 at 24-25, 131, Pl. Dep. 64-65, 204.) Even if plaintiff had argued that this occurrence constituted an adverse employment action, her claim based on this allegation would fail. First, any claim based on this allegation is procedurally barred, as plaintiff failed to mention it in any way in her charge of discrimination. *Jones v. Res-Care, Inc.*, 613 F.3d 665, 670 (7th Cir. 2010). Second, there is scant evidence in the record regarding the young man who allegedly replaced her – the record is void as to how old he was, or whether he was comparable to plaintiff in any material aspects. Further, plaintiff admits that after she was told there were not enough hours for her in the photo department, she briefly worked in the electronics department and then took a position in the claims department, which paid more than her photo lab position. (*Id.* at 25, Pl. Dep. 65:9-24.) Accordingly, her allegations fail to create a genuine issue of material fact as to whether her temporary removal from the photo lab actually constituted a "materially adverse change in the terms and conditions of employment." *Stockett*, 221 F.3d at 1001.

(7th Cir. 1996). Additionally, "[a] constructive discharge claim requires evidence that quitting was the only way the plaintiff could extricate herself from the intolerable conditions." *Gawley v. Ind. Univ.,* 276 F.3d 301, 315 (7th Cir. 2001). This requirement "eliminates from consideration" any harassing actions alleged by a plaintiff about which she did not notify her employer. *Id.*

When questioned at her deposition about why she felt compelled to resign, plaintiff named several reasons. First, plaintiff testified that Otera and Josef ignored her in her last few days at the store. However, behavior such as the "silent treatment" is "insufficiently severe to cause a reasonable person to quit." *Gawley,* 276 F.3d at 307, 316. Second, plaintiff claimed her coworkers were bullying her by clicking pens, hitting things, popping gum, honking horns, etc. However, plaintiff never informed her employer about any of these allegedly "bullying" actions, so they are "eliminate[d] from consideration." *Gawley,* 276 F.3d at 315. In any event, none of these actions would constitute conduct sufficiently severe to cause a reasonable person to quit her job.

Third, plaintiff reiterated that Otera made her work environment unbearable by telling her that she cost the company money in front of other people. However, false and/or arbitrary reprimands may be unpleasant, but they are not intolerable enough to effect a constructive discharge. *Simpson v. Borg-Warner Auto., Inc.,* 196 F.3d 873, 878 (7th Cir. 1999); *Harriston v. Chi. Trib. Co.,* 992 F.2d 697, 705 (7th Cir. 1993) (being reprimanded without reason was not intolerable enough to support argument for constructive discharge). Nor could plaintiff rely on her unsubstantiated allegation that

10

Otera gave her an unflattering review. The review is not in evidence, so it is difficult to assess plaintiff's allegation on this point, but even if it were, negative performance evaluations do not suffice to establish constructive discharge without some evidence that the review set the employee on a "dead-end path towards termination." *Fischer v. Avanade, Inc.,* 519 F.3d 393, 412 (7th Cir. 2008). In this instance, plaintiff herself admitted that she still received a "meets expectations" rating and a pay increase despite the allegedly unflattering review, and there is no evidence suggesting that the alleged review set plaintiff on a path towards failure at Wal-Mart.

Fourth, plaintiff stated that Josef made her work environment unbearable when he made comments about baby boomers during their conversation on January 14, 2011. However, as explained above, to establish constructive discharge, the situation must be "even more egregious than that needed for a hostile work environment" claim. *Overly,* 662 F.3d at 864. Generally, "sporadic inappropriate and rude comments by her supervisors," "offhand comments," and "isolated incidents" do not rise to the level of conduct that support a hostile work environment claim. *Porter v. City of Chi.,* 700 F.3d 944, 956 (7th Cir. 2012). Josef's alleged comments to plaintiff fit squarely into this category. Because such allegations would not suffice to establish a hostile work environment, they certainly do not support plaintiff's argument that she was constructively discharged. *See Overly,* 662 F.3d at 864.

Fifth and finally, plaintiff testified that she felt she had no choice but to quit, and therefore was constructively discharged, because her supervisors failed to address her

complaints about Otera and Josef. The court could imagine a situation where a manager's failure to address complaints could tacitly encourage further discriminatory action, thus creating a situation so extreme and odious that the manager's failure to address the issue would constitute a constructive discharge. If, after plaintiff's complaint, plaintiff's supervisors had somehow encouraged additional opportunities for allegedly discriminatory treatment and therefore caused plaintiff's working environment to continue to be discriminatory, then perhaps the situation would give the court pause.

But that is not what happened. After her complaint, the only interactions between plaintiff and Otera consisted of Otera walking slowly with her, saying "please" in a drawn-out way, and giving her an unflattering review (though she still received a "meets expectations" rating and a pay increase). Similarly, her only interactions with Josef consisted of him hitting objects with his hands as he walked away from the photo department and knocking on a grey cabinet when he told her to get returns. These interactions do not meet the extremely high standard for establishing a constructive discharge, because they do not indicate a situation "so unbearable that a reasonable person in that employee's position would be forced to quit." *Roby*, 579 F.3d at 785.

Plaintiff admits that, aside from the aforementioned interactions, Otera and Josef "totally avoided" and "ignored" her. (DE # 21-3 at 114, 135, Pl. Dep. 184, 208:16-22.) Plaintiff's superiors may not have been responsible for the respite in allegedly discriminatory treatment, but for purposes of plaintiff's constructive discharge

argument, plaintiff must show that her superiors' failure to address her complaints allowed plaintiff's exposure to discrimination to continue or somehow made things worse. This is something the evidence does not show.

Even when aggregating all of the unpleasant alleged circumstances listed above and considering the totality of those circumstances, the court cannot conclude that there is any question of fact as to whether plaintiff was constructively discharged. The Seventh Circuit has generally reserved the label of "constructive discharge" for situations involving egregious emotional torment and threats of physical harm. *See, e.g., Taylor v. W. & S. Life Ins. Co.,* 966 F.2d 1188, 1191 (7th Cir. 1992) (finding constructive discharge where the employee's boss consistently made racial comments and on one occasion held a gun to his head, took a photo, and later showed it at a staff meeting while joking that "this is what a n[*****] looks like with a gun to his head"); *Brooms v. Regal Tube Co.,* 881 F.2d 412, 417, 423 (7th Cir. 1989), *rev'd in part on other grounds, Saxton v. Am. Tel & Tel. Co.,* 10 F.3d 526 (7th Cir. 1993) (plaintiff established constructive discharge where "repeated instances of grossly offensive conduct and commentary" culminated with an incident during which a co-worker showed the plaintiff a racist pornographic photograph, told her that she was hired to perform the task depicted in the photograph, grabbed the plaintiff, and threatened to kill her). Though plaintiff may not have enjoyed her coworkers' silent treatment, their tapping and pen-clicking, Otera's public reprimand and unflattering review, Josef's comments about baby-boomers, and her supervisors' alleged lack of attention to her complaints, the court

cannot conclude that a combination of these factors was so unbearable that a reasonable person in plaintiff's position would feel she had no choice whatsoever, except to quit. *Roby,* 579 F.3d at 785. Accordingly, even when all of plaintiff's allegations are considered in the aggregate, her constructive discharge argument fails.

Because plaintiff's constructive discharge argument fails, plaintiff is unable to demonstrate any genuine issue of fact as to whether she suffered an "adverse employment action," an essential element of plaintiff's federal age and sex discrimination claims. *Dass,* 675 F.3d at 1068. Because no genuine issue of material fact exists as to this element, her federal discrimination claims fail, and defendant is entitled to summary judgment on those claims.

### B. Federal Retaliation Claim

Plaintiff also sues for retaliation. Under Title VII's anti-retaliation provision, it is unlawful for an employer to "discriminate against" an employee "because he has opposed any practice made an unlawful employment practice" by the statute or "because he has made a charge, testified, assisted, or participated in" a Title VII "investigation, proceeding, or hearing." 42 U.S.C. § 2000e-3(a). The ADEA contains a similar provision. 29 U.S.C. § 623(d).

Plaintiff testified at her deposition that the only factual basis for her retaliation claim was her contention that, in her last few days on the job, Otera and Josef ignored her. (DE # 21-3 at 132-33, Pl. Dep. 205-06.) Defendant correctly points out that plaintiff failed to include these allegations, or any allegations related to a possible claim for

retaliation, in her charge of discrimination. The Seventh Circuit Court of Appeals has rejected the contention that all discriminatory actions by an employer should be considered by a district court, even if only a few alleged acts were mentioned in the charge of discrimination. *Jones v. Res-Care, Inc.,* 613 F.3d 665, 670 (7th Cir. 2010). Rather, "each separate act of discrimination must be set out in [a] charge before an action can be brought." *Id.* For a plaintiff to proceed on a claim not raised in a charge, "there must be a reasonable relationship between the allegations in the charge and the claims in the complaint, and it must appear that the claim in the complaint can reasonably be expected to grow out of an EEOC investigation of the allegations in the charge." *Id.* (internal quotation marks and citations omitted).

In this case, plaintiff's charge of discrimination described the incident with Otera regarding the photo paper and her conversation with Josef about younger staff members. (DE # 1 at 5.) She also describes how she never heard anything from the company regarding a resolution of the issues, and felt so upset and stressed about the incidents and the way the company was handling them that she felt she had to resign. (*Id.*) Nowhere in her charge did she mention that she felt she was being retaliated against at all, much less by Otera and Josef when they ignored her on her last few days. Nor is there such a relationship between the allegations in the charge and plaintiff's allegations of retaliation that the retaliation claim could have been reasonably expected to grow out of an investigation. The fact that the alleged retaliatory actions were committed by the same individuals plaintiff complained about in her charge for other

15

reasons is not dispositive. "Any additional alleged act of discrimination can always be fit in and become part of an overall general pattern of discrimination. [Such an] argument, if accepted, would eviscerate the general rule that each separate act of discrimination must be set out in an EEOC charge before an action can be brought." *Jones,* 613 F.3d at 670. Because plaintiff failed to include any facts relevant to her retaliation claim in her charge of discrimination, the court considers the claim procedurally barred.

Even if the claim were not barred, it would fail. Both the direct and indirect methods of proving a retaliation claim require plaintiff to demonstrate an adverse employment action. *Jajeh v. County of Cook,* 678 F.3d 560, 569 (7th Cir. 2012) (direct method); *Whittaker v. N. Ill. Univ.,* 424 F.3d 640, 647 (7th Cir. 2005) (indirect method). However, an employee does not suffer an adverse employment action for purposes of a retaliation claim when her fellow workers give her "the silent treatment," *Sweeney v. West,* 149 F.3d 550, 556 (7th Cir. 1998), or otherwise ostracize her, *Parkins v. Civil Constrs. of Ill., Inc.,* 163 F.3d 1027, 1039 (7th Cir. 1998). Accordingly, plaintiff's allegations that Otera and Josef ignored her during her last few days on the job would fail to support a claim for retaliation because they are insufficient to establish the "adverse employment action" element of her claim. For these reasons, plaintiff's federal retaliation claim fails, and defendant is entitled to summary judgment on that claim.

## C. Fort Wayne Anti-Discrimination Ordinance

Plaintiff has also sued under the anti-discrimination ordinance adopted by the City of Fort Wayne, Indiana. The ordinance states that discrimination "is contrary to American principles and is harmful to the social, cultural, and economic life of the city." F.W., IND., CODE OF ORDS. § 93.001. Like the federal statutes referenced above and comparable Indiana civil rights statutes, IND. CODE § 22-9-1-2 & IND. CODE § 22-9-2-2, the Fort Wayne ordinance prohibits discrimination "against any person by treating any such person differently or by excluding from or failing or refusing to extend to any person equal opportunities with respect to hiring, termination, compensation, or other terms, conditions or privileges of employment" on the basis of a number of protected traits, including sex and age. *Id.* § 93.016(A).

"Indiana courts have traditionally looked to federal decisions for guidance when confronted with employment discrimination issues." *Ind. Dep't of Corr. v. Ind. Civil Rights Comm'n,* 486 N.E.2d 612, 617 n.5 (Ind. Ct. App. 1985). In this case, plaintiff has invoked a local ordinance that is entirely consistent with federal and state statutes, and the policies behind the local ordinance are the same as those behind the federal and state statutes. Accordingly, the court considers federal law persuasive in interpreting the Fort Wayne anti-discrimination ordinance, and finds that plaintiff's claim under the Fort Wayne ordinance fails for the same reasons that plaintiff's federal claims fail, as explained in detail above. *United Farm. Bur. Ins. Co. v. Metro. Human Relations Comm'n,* 859 F. Supp. 323, 328 (N.D. Ind. 1993) (interpreting Fort Wayne anti-housing-

17

discrimination ordinance in accordance with federal Fair Housing Act). Accordingly, defendant is entitled to summary judgment on that claim.

## IV. CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment (DE # 20) is **GRANTED.** There being no claims remaining against any defendant, the Clerk is hereby directed to **ENTER FINAL JUDGMENT** in this case stating:

> Judgment is entered in favor of defendant Wal-Mart Stores East LP; and against plaintiff Darlene Hughes, who shall take nothing by way of her complaint.

**SO ORDERED.**

Date: June 20, 2013

 s/ James T. Moody_____
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT